HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

    Plaintiff,

v.

10.56 ACRES, MORE OR LESS, SITUATED IN WHATCOM COUNTY, WASHINGTON, et al.,

    Defendants.

CASE NO. C07-1261RAJ

ORDER

## I. INTRODUCTION

This matter comes before the court on cross-motions for summary judgment. Dkt. ## 29, 30. No party has requested oral argument. For the reasons stated below, the court GRANTS the United States' motion (Dkt. # 29) and DENIES Defendants' cross-motion (Dkt. # 30). The court sets a pretrial conference for February 23, 2010, at 10:00 a.m.

## II. BACKGROUND & ANALYSIS

The United States is expanding its port of entry facility at the "Peace Arch" Canadian border crossing near Blaine, Washington. Interstate 5 ("I-5") is the principal highway bringing travelers to the Peace Arch. The 10.56 acres, more or less, of land at issue in this action consists of several parcels that Washington (the "State") owned until

ORDER – 1

the United States condemned them. The parcels serve as rights-of-way for I-5 near the Peace Arch.

There is no challenge to the United States' decision to condemn the property; the dispute to be resolved is how much the United States must pay the State as just compensation for the taking.

The court first addressed this action in an August 22, 2008 order. Dkt. # 25 ("Prior Order"). In the Prior Order, the court determined that if the reconstruction and elevation of the northbound roadway would impose operating and maintenance costs in excess of those for the pre-taking roadway, the State was entitled to those costs as part of its just compensation for the taking.

To address the instant motions, the court widens its focus to include the entirety of the condemned property, not merely the section of northbound I-5. The condemned property consists of five parcels of land. Two of the parcels comprise about a fifth of a mile of southbound I-5. A third parcel includes the section of northbound I-5 that was the subject of the Prior Order. The remaining two parcels border the other parcels, and were acquired solely for the purpose of providing construction access during the expansion project. The United States acquired the first two parcels in fee simple absolute. It acquired all rights to the third parcel, but after it constructs the elevated roadway, it will convey air and surface rights sufficient to permit the State to operated and maintain the elevated roadway. The United States acquired only construction easements in the remaining two parcels.

The record does not reveal why the United States structured its taking of the property in this manner, but the relevant effect of the taking for purposes of these motions is as follows: the State will no longer have any responsibility for maintaining the condemned portion of southbound I-5, whereas it must maintain the condemned portion of northbound I-5 in perpetuity. The court's previous order established that the State could recover its increased operation and maintenance costs for the northbound roadway.

ORDER – 2

The United States now queries whether it can offset that amount that the State's costs will decrease by virtue of being relieved of the burden of maintaining and operating the condemned portion of the southbound roadway. The parties' motions do not seek a ruling as to the actual cost increase or decrease; the question before the court is thus purely legal.

The parties also raise another legal question. Assuming that the State can prove an increase in operation and maintenance costs, it will incur those costs over many years. The State insists that it is entitled to a full award of future maintenance costs without reducing those costs to their present value. The United States disagrees.

The court will address each legal question in turn. As the court noted in the Prior Order, it defers to neither party when answering legal questions presented in a summary judgment motion. Prior Order at 3 (citing *Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 942 (9th Cir. 1999)). The parties raise no factual disputes.

Although no precedent of which the court is aware addresses the parties' first question, their concession that the substitute facilities doctrine[1] applies is dispositive. Ordinarily, the measure of "just compensation" that the Fifth Amendment requires when the United States takes property is the fair market value of the property. Prior Order at 4 (citing *United States v. 50 Acres of Land ("Duncanville")*, 469 U.S. 24, 29 (1984)). But, for property whose fair market value cannot be ascertained, typically property dedicated to public functions, "just compensation" is the cost of an adequate substitute facility. Prior Order at 4. Nothing compelled the parties to concede that the substitute facilities doctrine applies in this case, but they are now bound by their concession. One consequence of their choice is that the market value of the condemned property is no longer relevant. The decision in *Washington v. United States ("Hanford")*, 214 F.2d 33 (9th Cir. 1954), which the court discussed in the Prior Order, illustrates this principle. In *Hanford*, the United States condemned 28 miles of a Washington highway. *Id.* at 37.

---

[1] The Prior Order explains the substitute facilities doctrine in detail.

ORDER – 3

Because the creation of a federal atomic power project surrounding the road resulted in the relocation of virtually all State residents who used it, the court found the State's existing roadways were an adequate substitute facility. *Id.* at 44. The State received a nominal damage award of one dollar. *Id.* at 36. The land condemned no doubt had intrinsic value, but the inability to ascertain it meant that the State was limited to the substitute facility measure of compensation. By that measure, just compensation for 28 miles of roadway was a nominal payment of a dollar.

Because the value of the taken land at the Peace Arch is no longer relevant, the State's contention that an offset to the United States for assuming the operating and maintenance costs of the southbound roadway amounts to a double recovery is unavailing. The double recovery, in the State's view, is that the United States avoids paying fair market value for the property containing the southbound lanes, while seeking credit for the cost savings to the State that result from taking those lanes. Cross-Mot. (Dkt. # 30) at 3. But the United States "avoided" paying fair market value only because the State conceded that the substitute facilities doctrine applied. The State mistakenly believes that the substitute facilities doctrine deems the cost of a substitute facility to be "the equivalent" of a property's market value. *E.g.*, Cross-Mot. (Dkt. # 30) at 6. As the court just noted, the cost of a substitute facility is an alternate measure of just compensation, it is not the equivalent of fair market value. Indeed, courts invoke the substitute facilities doctrine only where fair market value cannot be determined. *See Duncanville*, 469 U.S. at 29-30. If the State wished to force the United States to pay market value, or to have the market value of one or more parcels offset against the United States, its concession that market value was not ascertainable was ill advised.

The State "facility" that the United States condemned was a conduit for northbound and southbound traffic on I-5. There is no dispute that the United States is providing a facility that is functionally equivalent to the one condemned. To the extent that the substitute facility will increase the State's maintenance and operation costs, the

ORDER – 4

Prior Order holds that the State is entitled to compensation. The court finds no support, however, for the State's contention that it can ignore cost reductions at the facility while focusing exclusively on cost increases. The State urges the court to focus on the happenstance that the southbound roadway is contained within two parcels of land, whereas the northbound roadway is within a third parcel. The State concedes that it has no increased costs arising from the taking of the first two parcels, and urges the court to focus solely on the increased costs associated with the third. Even if that narrow focus would benefit the State,[2] the outcome of this case cannot turn on the arbitrary division of the property into separate parcels. The State implicitly contends that result in this case would be different if the condemned property were one parcel rather than five, a result that finds support in neither logic nor precedent. "Just compensation," whether accomplished by determining fair market value or applying the substitute facilities doctrine, is intended to make the owner whole, and no more. *California v. United States*, 395 F.2d 261, 265-66 (9th Cir. 1968) (citing *United States v. Virginia Elec. & Power Co.*, 365 U.S. 624, 633 (1961)). If the State suffers no net cost increase a result of the taking, then a nominal damage award will make it whole.

---

[2] The State's proposed parcel-by-parcel methodology is as follows. First, consider the two parcels containing the southbound roadway as a separate taking, for which the State is entitled to only nominal damages. Then, consider the parcel containing the northbound roadway as a second separate taking, for which the State is entitled to an award of its increased operating and maintenance costs. The State concedes that it is not aware of any court that has taken this approach.

    The State's sole attempt to cite precedent in support of its methodology is to point to cases that discuss severance damages associated with a taking. Severance damages result when the government takes only a portion of a property and thereby damages the remainder, or when it takes an entire property and thereby damages adjoining property. In either case, severance damages are available only where the "condemned and severed properties . . . [are] either part of the same parcel or subject to unitary use . . . ." *United States v. 10.0 Acres*, 533 F.2d 1092, 1095 n.1 (9th Cir. 1976). The State has no claim to severance damages in this case, as it is not claiming an injury to its property as a result of the taking. The State attempts to claim severance damages to the property interest that the United States will reconvey to it to permit operation and maintenance of the elevated portion of northbound I-5. This characterization is inapt for numerous reasons, not least of which is that the injury, if any, to northbound I-5 is occasioned not by the severance of property, but by the construction of an elevated roadway.

ORDER – 5

The cost of a substitute facility for the condemned property is the difference between the State's costs of maintaining and operating the facility before the taking and the State's costs of maintaining and operating the facility after the taking. On this record, the court has no idea what that difference might be. If pre-taking costs exceed post-taking costs, then the State is entitled to nominal damages only, just as it received in *Hanford*. If post-taking costs exceed pre-taking costs, then the State will be awarded those costs.

If the State prevails in showing it is entitled to more than a nominal damage award, it will necessarily have proved that it will incur net operation and maintenance costs in the future. The parties' second question is whether the United States is entitled to reduce those future costs to their present value.

Federal law demands that damages for future expenses be reduced to their present value. *E.g.*, *Monessen S.W. Railway Co. v. Morgan*, 486 U.S. 330, 339 (1988) ("We have consistently recognized that damages awards in suits governed by federal law should be based on present value.") (internal quotation omitted). To pay a party future expenses in the present is a windfall, because the time value of money dictates that the payment will be worth more than the expenses by the time they arise. *Id.* ("The self-evident reason [for discounting to present value] is that a given sum of money in hand is worth more than the like sum of money payable in the future.") (internal quotation omitted). The State's attempt to avoid well-settled law by claiming that it seeks severance damages, which need not be reduced to present value, is unavailing. First, severance damages are implicitly reduced to present value, as they compensate for an injury that will continue over the life of the property. Second, as the court has already noted, the State has suffered no severance damages in this case. *See supra* n.2.

The State gets no further in its attempt to avoid reducing its future costs to present value by protesting that it lacks the financial flexibility to take advantage of the time

ORDER – 6

value of money. Even taking those protests at face value,[3] the court notes that the State has not cited precedent from any court in any jurisdiction excepting a state or subdivision thereof from the application of the present value rule. Lacking precedent or persuasive argument, the court declines to make an exception in this case. The State's net future costs, if any, must be discounted to present value.

### III. CONCLUSION

For the reasons stated above, the court DENIES the State's summary judgment motion (Dkt. # 30) and GRANTS the United States' motion (Dkt. # 29). The court sets a pretrial conference for February 23, 2010, at 10:00 a.m.

DATED this 27th day of January, 2010.

*Richard A. Jones*
The Honorable Richard A. Jones
United States District Judge

---

[3] The State premises its argument on the notion that it cannot invest money except by legislative command, and thus could not set aside an award for future costs at the property without enacting a statute. The State ignores that it need not invest money in a separate account to allow its value to grow over time. Any capital expenditure of an award in this case is the equivalent of an investment.

ORDER – 7